CHARLES F. TILLINGHAST, Trustee, *v.* WILLIAM B. D'WOLF and others.

Where a testator created an equitable estate for life for one of his daughters, and provided, that in the event of her death without issue, the remainder should be equally divided between his *children* and a particular *grandchild*, whom he named, it was *held*, that other grandchildren, whose mother was dead at the time he made his will, and who were objects of his bounty under another clause of his will, were not entitled, by construing the word " CHILDREN " to include " *grandchildren* " in such a case, to share in the remainder.

THIS was a bill in equity, filed by the plaintiff, as trustee, under the will of the late James D'Wolf, of Catharine D'Wolf Dodge, a daughter of said James, afterwards Mrs. Catharine D'Wolf Davis, who had lately died without issue. The plaintiff had been appointed her trustee by the court, in lieu of the executors of said will; and finding that, upon her death, the children of Mary Ann Sumner, another daughter of said James, claimed to share in the estate of Mrs. Davis, brought this bill, amongst other things, to obtain a construction of the clause of the will of said James, creating the trust, and directions as to the above claimants, making, as parties defendant to said bill, the children of said Mary Ann, and the other children and grandchildren of said James D'Wolf, and those persons who claimed title under them. The case was heard upon bill and answers.

The clause of the will of James D'Wolf, which created the above trust, as well as a trust for his daughter, Josephine (Mrs. Lovett), was as follows, being the *eleventh* clause of said will:—

## " ELEVENTH.

"I give and devise to my executors, hereinafter named, to have and to hold, to them as joint tenants, and not as tenants in common, upon the trusts following, that is to say: upon trust for my daughter, Catharine D'Wolf Dodge, wife of Joshua Dodge, Esq.

"*First.* One-fifth part of all my lands and personal property in the State of Ohio. Also, one-fourth part of my Arkwright cotton manufacturing establishment, consisting of all the real estate, whereon the said establishment is located, and all the lands thereto attached, together with all the cotton mills, dwelling houses, and other buildings and improvements thereon, being all the lands and real estate I own in the towns of Scituate, Cranston and Coventry, and consisting, also, of all the machinery and tools and utensils to the same belonging. Also, one hundred and five shares of the capital stock of the Bank of the United States, being ten thousand five hundred dollars. Also, two hundred shares—say five thousand dollars—of the capital stock of the

Tillinghast, Trustee, *v.* D'Wolf and others.

Blackstone Canal Bank, in Providence. Also, all the remainder of my lot of land, in the city of Baltimore, called "Greene Hill," being about five acres, be the same more or less, three house lots, Nos. 1, 2, 3 having been already given from said tract to James D'Wolf, 3d, and to my daughter, Harriet Hall; also, my house and lot of land, in Bristol, now occupied by my daughter, Nancy Homer, being bounded westerly on Hope street; northwardly, on Jail lane; eastwardly, on the Jail lot, and southwardly, on land of Jonathan Fales and the heirs of Samuel Oxx, deceased; also, my lot of land which was a part of the estate of the late Jeremiah Ingraham, being bounded on the north, the east and the south by lands of Lemuel C. Richmond, and west by Wood street. Also, four hundred and fifty-eight shares of the Blackstone Canal Company stock, which stock I consider to be worth about thirty-four hundred dollars.

"I also give and bequeath to my said executors, in trust as aforesaid, for the use and benefit of my daughter, Josephine, to say, one-fifth part of all my lands and personal property in the State of Ohio. Also, one-fourth part of my Arkwright cotton manufacturing establishment, consisting of all the real estate whereon the said establishment is located, and all the lands thereto attached, together with all the dwelling houses, cotton mills, and other buildings and improvements thereon, being all the lands and real estate I own in the towns of Scituate, Cranston and Coventry, and consisting, also, of all the machinery and tools and utensils to the same belonging. Also, one hundred and five shares of the capital stock of the Bank of the United States, being ten thousand five hundred dollars. Also, one-sixth part of my lands in Louisville, or one-sixth part of the proceeds of said lands, exclusive or independent of what I have given to my son, James, which one-sixth I consider will be about fifty thousand dollars, during their respective natural lives, to keep the same funds, invested in the best stocks, or bonds and mortgages, for their interests, should the present investment of said stocks be paid or divided, and to pay the rents, issues, incomes and profits, or dividends, to my said daughters respectively, during their respective natural lives, upon their several separate

receipts, free from the control or disposition of their respective husbands, or of any future husband or husband, and upon the decease of my said daughters respectively, upon the trust to hold the share or shares of such daughter or daughters so dying, to and for the use of the child or children of such daughter or daughters respectively, then surviving, and of the issue of any child or children of such who may die, before his, her or their mother or mothers, leaving issue, and his, her or their heirs and assigns forever, such issue, respectively, to have and to take the shares, which his, her or their parent or parents, respectively, would have been entitled to if living. And, further, my will is, that in case either of my said daughters shall die without leaving any lawful issue, then and in that case, this provision made for such daughter shall be equally divided among all my children and my grandson, James D'Wolf, or to their heirs, share and share alike."

At the time of the making of the will of James D'Wolf, and of his death, his daughter, Mary Ann Sumner, was dead, leaving as her sole surviving children, James D'Wolf Perry, Alexander Perry, Nancy B. Perry,—since, by marriage, Mrs. Nancy B. Lay,—whose claim to share in Mrs. Davis's estate, trust estate under the above clause in the will of their grandfather, was submitted to the court. They were described as the children of Mary Ann Sumner, entitled to a considerable estate, under the fourth clause of the will of James D'Wolf.

*C. F. and James Tillinghast*, for the trustee.

*R. W. Greene*, for the widow, heirs at law and executor of William B. D'Wolf, and for the widow, heirs at law and executors of Mark Anthony D'Wolf.

*A. Payne and R. W. Greene*, for R. L. and Juliana Cutting.

*A. Payne*, for the heirs at law of William H. D'Wolf.

*James H. Parsons*, for the executor of Harriet D'W. Hall.

*C. F. Choate*, for the executor of Nancy B. Homer.

*William H. Potter*, for James D'Wolf.

*Charles Hart*, for Andrew Jackson Davis.

Tillinghast, Trustee, *v.* D'Wolf and others.

*James H. Parsons and Thomas A. Jenckes,* for James D'Wolf and Alexander Perry and Mrs. Nancy B. Lay.

BRAYTON, J. The testator, in this case, devised certain property to his executors, in trust, for the separate use of his daughter, Catharine, for her life, and to hold the same after her death, for the use of her children and their issue; but in case there should be no issue, he directed that the provision made for his said daughter, *i. e.,* the estate devised to her for life, should be equally divided among all his children and one of his grandchildren,—viz., his grandson, James D'Wolf,—or their heirs. Three other grandchildren, viz., the children of the testator's deceased daughter, Mary Ann Sumner, claim to be entitled under the devise.

These claimants are not named as devisees; but it is said, that they are entitled to share in the estate by virtue of the intent of the testator, as gathered from the whole will; that they should, taken collectively, share equally with the testator's children in all his estates.

That he intended to give them a fair portion of his estate, we can see by the devise to them of large estates, in the fourth clause; and that he intended to give them a share of the residue of his estate, appears by the twelfth clause; but we are not warranted in inferring, from these, that he intended them to share, either individually or collectively, equally with his children, or to share at all in this devise. We cannot construe the word "*children*" to include "*grandchildren,*" when there are persons to answer the description of children, unless (which is not the case here) there be some ambiguity in the language rendering it necessary, or unless the testator's intent, expressed in other parts of the will, could not otherwise be satisfied. Williams on Executors, 742; 2 Dessass. 308.

The testator has used the word "*children*" and the word "*grandson*" in the same connection, showing that he did not mean by "*children*" to include "*grandchildren.*"

The counsel has suggested an insuperable difficulty in the way of this claim, when he says, "the only possible ground of objection against the claim of these children of Mrs. Sumner is,

that they are not specially mentioned in this clause." The rule is, that the legatee must answer the description given by the testator, or he cannot take. The claimants are neither named nor described in any way. In such case, there cannot be said to be any ambiguity; and unless there is, it cannot be aided by the context, or by parol evidence. We cannot substitute the name of a devisee, or a description of one, any more than we can a description of the property devised; and, clearly, we could not do that.

We can see no way in which these claimants can take. They are not named; they are not described as the objects of the gift. On the contrary, others are named as such objects, to whom the estate is expressly given; and, by necessary consequence, these are excluded though they may be heirs; and the direction to the trustee must be, that they are not entitled.